FILED

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### Southern Division

99 NOV 10  PM 2: 07

U.S. DISTRICT COURT
N.B. OF ALABAMA

JEROME BEVELLE                    )
    Plaintiff;                     )
                        )
-vs.-                             )
                        )          No. CV-97-P-1390-S
UNITED STATES PIPE AND            )
FOUNDRY COMPANY AND               )
CHARLES REEVES
    Defendants.

ENTERED

NOV 1 0 1999

### OPINION

    The plaintiff, a former employee of the U.S. Pipe and Foundry, Co., filed suit alleging

that the defendants discriminated against him on the basis of race in violation of Title VII and §

1981. His complaint also stated state law claims of outrage and assault and battery. The court

took two motions in this case under submission on January 8, 1999: the defendants' Motion for

Summary Judgment, filed August 17, 1998 and the defendants' Motion to Strike, filed November

20, 1998. For the reasons expressed herein, the motion for summary judgment is due to be

granted, and the motion to strike is due to be granted in part and denied in part.

### Facts[1]

    The plaintiff was hired by U.S. Pipe and Foundry Co. ("U.S. Pipe") on March 1, 1995

as a Pipe Painter and Reconditioner in U.S. Pipe's Quality Control Department. On April 12,

1995, Bevelle was reassigned to the Melting Department where he held the position of Light Off

---

    [1]The recitation of facts is presented in the light most favorable to the plaintiff.

Man. Part of his job was to take samples of molten iron and send them to a laboratory for analysis. Prior to his discharge, he received two reprimands-- one oral and one written-- for failing to watch the light which indicated whether a sent sample had been received by the lab. He normally worked the 11 p.m. to 7 a.m. shift.

Bevelle was assigned to work overtime at U.S. Pipe on July 12, 1996, a 'non-production' day, beginning at 6 a.m. On these days, the company performs maintenance work and checks its equipment. When Bevelle arrived that day, he began work following instructions he had received that morning from a supervisor named Williamson to "finish cutting out the trough and do the runner." See Pl.'s Dep. at 89. Charles Reeves, a different supervisor, approached Bevelle and ordered him to stop working on what he was doing. Bevelle tried to tell Reeves that Williamson had told him to work on the trough and the runner, and he and Reeves got into an argument. The plaintiff alleges that Reeves would not let him explain that the plaintiff had been told to do the work by Williamson, and that Reeves just told him to "shut up." Reeves contends that Bevelle spoke to him angrily and refused to follow instructions. Reeves then asked the plaintiff to follow him to the office. They stopped before they reached the office and continued to argue. Reeves then sent Bevelle to the Personnel Department; however, he remembered that the Personnel Department was not open, so he told Bevelle to clock out, leave the plant, and return later for a meeting with personnel.     Bevelle then asked to speak to Gerald Podbel, the General Superintendent at the plant. According to the defendant, Podbel was not available and Bevelle refused to leave, so Reeves located Hal Eddings, the maintenance supervisor. After talking to Eddings, Reeves could not locate Bevelle, but he found Podbel, who refused to see Bevelle at that time.

2

What happened next is a matter of some dispute between the parties. It is undisputed that Reeves found Bevelle and asked the plaintiff to follow him to personnel, at which time the plaintiff was escorted out of the plant by security. The defendants maintain that Reeves spotted Bevelle in front of the laboratory and heading towards the supply house, not following Reeves' instructions to leave the plant. According to the plaintiff, he was on his way out of the plant as ordered when he returned to retrieve his keys and his lunch. The plaintiff asserts that, despite his protestations that he was leaving, Reeves ordered him back for the sole purpose of having him escorted out by security.

According to the defendants, Reeves met with Benny Smith, U.S. Pipe's Personnel Director, and told Smith that Bevelle had refused to follow instructions and had been "confrontational." See Def.'s Exh. C, Aff. of Benny Smith. After an investigation involving Bevelle's representatives, Smith concluded that Bevelle had been grossly insubordinate, and accordingly Bevelle was discharged by U.S. Pipe.

Bevelle filed a grievance with U.S. Pipe which was discussed at the Steelworkers' Third Step Grievance Meeting on August 10, 1996. After he was not reinstated, Bevelle invoked his right under the collective bargaining agreement to an arbitration hearing. On February 19, 1997, Bevelle's union and U.S. Pipe tried the case before an arbitrator, and Bevelle's grievance was denied. On May 5, 1997, the plaintiff filed this suit against U.S. Pipe in the Circuit Court for Jefferson County, and the case was removed to this court.

## Analysis

### Defendants' Motion to Strike

The defendants have moved to strike two pieces of evidence submitted by the plaintiff in

3

response to the motion for summary judgment: the affidavit of Malachi Jackson, a former employee of U.S. Pipe, and the transcript of the August 20, 1996 Steelworkers' Third Step Grievance Meeting between representatives of U.S. Pipe and the plaintiff's union.

In his affidavit, Jackson relies on the plaintiff's deposition, discussions with the plaintiff, and his former employment at U.S. Pipe in forming an opinion about whether Bevelle's discharge was due to race discrimination. Although Jackson speculates as to the motivation of Reeves and U.S. Pipe in terminating the plaintiff, he has no direct knowledge of the events that transpired on July 12, 1996. Jackson's opinion is relevant only as to his personal observations while working at U.S. Pipe. The parts of the affidavit that discuss the circumstances of or the reasons behind Bevelle's termination are due to be stricken and have not been considered by the court in granting the motion for summary judgment.[2]

The defendants have moved to strike the Grievance Meeting transcript on the grounds that the transcript is unsworn and unauthenticated. In their brief, the defendants admitted that the transcript was prepared by an employee of U.S. Pipe. See Def.'s Brief at 8, n. 2. The defendants' tacit acknowledgment of the transcript's authenticity is sufficient for the court to consider it as evidence; therefore, the motion to strike is due to be denied as to the Grievance Meeting transcript.[3]

---

[2]However, even if Jackson's affidavit had been considered in its totality, the defendants' motion for summary judgment would still be due to be granted.

[3]If the lack of an authenticating affidavit were viewed by the court as critical to consideration of the transcript, the court would have reopened the discovery period and given the plaintiff the opportunity to provide such an affidavit. The court would not have granted summary judgment without providing the plaintiff an additional opportunity to present this evidence to the court.

4

Defendants' Motion for Summary Judgment

The plaintiff has stated several claims against the defendants. Under Title VII and § 1981, the plaintiff alleges that his discharge was motivated by racial discrimination and that he was subjected to a racially hostile environment. In his complaint, the plaintiff has also stated claims under state law for the tort of outrage and assault and battery. The plaintiff has since abandoned his assault and battery claim, See Pl.'s Dep. At 142, and in his brief has stated that summary judgment is only contested as to his Title VII discriminatory discharge claim. The defendant's motion for summary judgment is due to be granted as to this claim; accordingly, all of the plaintiff's claims against the defendants are due to be dismissed.

To succeed on a Title VII claim of disparate treatment on the basis of race, the plaintiff must prove that the defendants' employment decisions were motivated by discriminatory intent. See Watson v. Fort Worth Bank and Trust, 487 U.S. 977, 986 (1988). A Title VII plaintiff can prove intentional discrimination by presenting direct evidence of a decisionmaker's discriminatory intent, see Buckley v. Hospital Corp. of America, Inc., 758 F.2d 1525, 1529-30 (11th Cir. 1985), or by stating a case based on circumstantial evidence. See McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1973).

Bevelle has not presented any direct evidence of discrimination. Therefore, to state a claim of intentional discrimination based on circumstantial evidence, the plaintiff must meet the familiar standard of the McDonnell-Douglas burden-shifting test. See id. at 802.

First, the plaintiff must establish a prima facie case by showing that (1) he belongs to a protected class; (2) he was qualified for the position in question; (3) he suffered an adverse employment action and (4) that this adverse decision was causally related to the status of the

5

plaintiff as a member of the protected class. See Jones v. Firestone Tire and Rubber Co., 977 F.2d 527, 537-38 (11th Cir. 1992). As Title VII claims necessarily involve different factual circumstances, the particular elements of a prima facie case will vary depending on a plaintiff's specific allegations. See McDonnell-Douglas, 411 U.S. at 802, n.13. To state a prima facie case that he was discriminated against by being terminated for engaging in 'misconduct', Bevelle must present evidence that the same conduct was engaged in by a member of a protected class and that employee did not suffer the adverse employment action. See Nix v. WLCY Radio/Rahall Communications, 738 F.2d 1181, 1185 (11th Cir. 1984). If the plaintiff presents credible evidence of a prima facie case, it raises a rebuttable presumption of intentional discrimination.

Second, the Mc-Donnell Douglas test provides the employer an opportunity to articulate a legitimate, nondiscriminatory reason for the employment decision to rebut the presumption of discrimination raised by the plaintiff's prima facie case. See Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981).

Third, once the defendant sets forth a legitimate reason, the burden of proof shifts back to the plaintiff to show that the asserted reason was a pretext for discrimination. See St. Mary's Honor Center v. Hicks, 509 U.S. 502, 515 (1993). Even if the plaintiff did not actually engage in the alleged misconduct, the employer can rebut a prima facie inference of discrimination by showing that it acted on a good faith belief that the employee committed the violation. See Jones v. Gerwens, 874 F.2d 1534, 1540 (11th Cir. 1989).

To state a prima facie case, Bevelle must present credible evidence that "the misconduct for which he was discharged was nearly identical to that engaged in by an employee outside the protected class whom the employer retained." Nix, 738 F.2d at 1185 (quoting Davin v. Delta

6

Airlines, Inc., 678 F.2d 567, 570 (5th Cir. 1982)).   Bevelle testified in his deposition that two

other employees, Anthony Cheatom and a man named Yates argued with Reeves and were not

terminated.  However, the plaintiff admitted that neither of the men refused to do the work that

Reeves directed them to do.[4]  See Pl.'s Dep. at 115.

Even if Bevelle could present a prima facie case, U.S. Pipe has stated a legitimate non-

discriminatory reason for his termination.  After the plaintiff had received two poor performance

reprimands, U.S. Pipe believed that the plaintiff had been argumentative and insubordinate to a

supervisor and had refused to follow the supervisor's instructions.  The evidence submitted by the

plaintiff suggests that his termination may have been due to a personal conflict with Reeves.[5]  The

plaintiff has not submitted sufficient evidence such that a reasonable jury could conclude that U.S.

Pipe intentionally discriminated against him.

As evidence of racial discrimination, Bevelle presents the transcript of the Steelworkers'

Third Step Grievance Meeting of August 20, 1996.  At the meeting, a representative of U.S. Pipe

admits that the company's normal procedures were not followed when Bevelle was terminated.

U.S. Pipe's management did not meet with him at the time of his termination.  However, as the

defendants point out, Bevelles' union representative presented the plaintiff's case for reinstatement

to U.S. Pipe at the Grievance Meeting and Bevelle and the union later arbitrated the matter with

---

[4]Additionally, both the plaintiff and the defendants failed to note that Cheatom was discharged from U.S. Pipe for unexcused tardiness; his grievance was heard at the same grievance meeting as Bevelle's.

[5]In his deposition, the plaintiff states that Reeves personally disliked him and was not necessarily discriminatory towards African-Americans.  See Pl's Dep. at 64-65, 119.  He also admits that Reeves did not permit anyone, white or black, to talk back to him.  See Pl.'s Dep. 118-20.

7

the company. <u>See</u> Attachment to Defendant's Exhibit C.

Bevelle also presents the affidavit of a former U.S. Pipe employee, Malachi Jackson. Although Jackson speculates as to the motivation of Reeves and U.S. Pipe in terminating the plaintiff, he has no direct knowledge of the events that transpired on July 12, 1996. Considering the portions of the affidavit that are not due to be stricken, Jackson's statements discuss the atmosphere at U.S. Pipe for black employees during his tenure there. Jackson's statements regarding U.S. Pipe and Reeves are not significantly probative regarding whether the plaintiff was discriminated against. Jackson left U.S. Pipe over a year before the plaintiff was terminated, and he has no personal knowledge of the circumstances of Bevelle's termination.

The circumstances surrounding the plaintiff's termination were questionable, in that Bevelle was fired by a supervisor that he rarely worked with and was not given a personnel meeting before being escorted out of the plant. However, the evidence submitted by the plaintiff, describing his version of events, would not persuade a reasonable jury that his termination was based on illegal discrimination rather than a personal conflict with Reeves. "'While an employer's judgment or course of action may seem poor or erroneous to outsiders, the relevant question is simply whether the given reason was a pretext for illegal discrimination.'" <u>Nix</u>, 738 F.2d at 1187 (quoting <u>Loeb v. Textron, Inc.</u>, 600 F.2d 1003, 1012 n. 6 (1st Cir. 1979). The plaintiff has not presented sufficient evidence to support a finding of intentional discrimination. Therefore, the defendants' motion for summary judgment is due to be granted.

## Conclusion

The defendants' motion to strike is due to be granted as to the parts of the affidavit of

8

Malachi Johnson that discuss the plaintiff's discharge from U.S. Pipe. The motion is due to be denied as to the parts of Jackson's affidavit that rely solely on his observations at U.S. Pipe and as to the Grievance Meeting Transcript submitted by the plaintiff. The defendants' motion for summary judgment is due to be granted, terminating this case.


Dated: _N w , / 0_____ , 1999

Chief Judge Sam C. Pointer, Jr.

Service List:
 Jake V. Bivona
 Bill Thomason
 James P. Alexander
 Abdul K. Kallon